IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETTY J. WALKER | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE | : | |
| Commissioner of Social Security, | : | No. 09-384 |
| | : | |
| Defendant | : | |

**August 9, 2010**                                                                                          **Anita B. Brody, J.**

## MEMORANDUM

**I. INTRODUCTION**

Plaintiff Betty J. Walker ("Walker") brings this action pursuant to 42 U.S.C. § 405(g), which grants district courts jurisdiction to review final decisions by the Commissioner of the Social Security Administration ("Commissioner") denying claims for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. The United States Magistrate Judge ("Magistrate") conducted an initial review and issued a Report and Recommendation ("R & R") that I affirm Administrative Law Judge Christine McCafferty's ("ALJ") decision to deny benefits. Walker submitted five objections to the R & R and requested a de novo determination. I reviewed the record and will remand for reconsideration of step five of the disability evaluation.

**II. JURISDICTION AND LEGAL STANDARD**

Jurisdiction is proper under 42 U.S.C. § 405(g). A district court "must uphold a final

agency determination unless [it] find[s] that it is not supported by substantial evidence in the record." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence is something "more than a mere scintilla;" rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). A reviewing court must not "weigh the evidence or substitute [its own] conclusions for those of the fact-finder." Id. (internal quotation marks omitted).

A district court conducts a de novo review of objections to the magistrate's R & R. Fed. R. Civ. P. 72(b)(3).

### III. FACTUAL BACKGROUND

Walker is fifty-four years old and suffers from osteoarthritis, HIV, and hypertension. (Record at 13, 16.) She has a high school education and is unemployed. (Id.) On March 24, 2006, Walker filed an application for SSI benefits, claiming that severe leg pain, HIV, and high blood pressure prevented her from working. (R. at 61.) Walker's claim was denied and Walker promptly filed a request for a hearing by an administrative law judge. (R. at 61, 66.) On September 5, 2007, Judge McCafferty held a hearing. (R. at 35.)

Administrative courts use a five-step analysis to decide if a SSI applicant is disabled. See Rutherford, 399 F.3d at 551. The burden is on the claimant in the first four steps to show that she: "(1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the [residual functional capacity] to return to her previous employment." Id. If the claimant satisfies the third step, then she is per se disabled. Id. If the claimant fails to satisfy the third step, but demonstrates that she lacks the residual functional

capacity ("RFC") to return to her previous employment, "the burden then shifts to the Commissioner at step [five] to show that other jobs exist in significant numbers in the national economy that the claimant could perform." Id.

On September 27, 2007, the ALJ issued a decision. Following the five-step analysis, the ALJ concluded that Walker was not "disabled." (R. at 11.) The ALJ found that Walker satisfied steps one and two because she had "not engaged in substantial gainful activity since March 24, 2006" and because she suffered from a severe impairment.[1] (R. at 13.) The ALJ found that Walker failed to satisfy step three, however, because she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments" in an appendix. (R. at 14.) Thus, the analysis moved to step four. Although the ALJ determined that Walker had the RFC to perform the full range of light work, with some limitations, she also found that Walker had no past relevant employment to which she could return. (R. at 14-16.) Therefore, the analysis moved to the fifth and final step. (R. at 16.) Relying on testimony from a vocational expert ("VE"), the ALJ found that occupations that Walker could perform exist in significant numbers in the national economy. (Id.)

On November 19, 2007, Walker sought review of the ALJ's decision. (R. at 193-202.) On December 5, 2008, the Social Security Appeals Council ("Appeals Council") denied her request for review. (R. at 4-7.) On January 28, 2009, Walker filed this action pursuant to 42 U.S.C. § 405(g), alleging that the ALJ's decision to deny benefits was not supported by substantial evidence. (R & R 3.) The Magistrate issued a R & R supporting the ALJ's decision.

---

[1] The ALJ determined that Walker had arthritis in the bilateral knees and hands, and that Walker's HIV and hypertension were non-severe and controlled by medication. (R. at 13.) Of the identified impairments, the ALJ found that only arthritis was severe. (Id.)

(R & R 10-18.) She concluded that the ALJ's RFC determination, decision to deny Walker disability status, and conclusion that significant numbers of occupations that Walker could perform exist in the national economy were all supported by substantial evidence. (Id.) Walker now objects to the R & R.

IV. DISCUSSION

Walker makes five objections to the R & R. Specifically, Walker claims that the Magistrate failed to address: 1) the ALJ's failure to discuss the opinion of Walker's treating physician assistant; 2) the weight given by the ALJ to the opinion of the state agency reviewer; 3) the evaluation of physical therapy records submitted to the Appeals Council; 4) the ALJ's failure to comply with Social Security Ruling ("SSR") 00-4p and to marshal substantial evidence showing that there are significant numbers of jobs or occupations in the national economy that Walker could perform; and 5) the ALJ's non-compliance with SSR 83-12 and SSR 83-14. The first three objections relate to step four of the disability analysis, and the fourth and fifth objections relate to step five. I will address each objection de novo.

**A. Step Four- RFC Determination**

Walker's first three objections pertain to step four of the disability analysis. Under step four, the ALJ must determine the claimant's RFC. See Rutherford, 399 F.3d at 551. The ALJ found that Walker has the RFC "to perform light work except that she is limited to no more than occasional reaching, fingering and handling." (R. at 14.) Walker contends that this finding is unsupported by substantial evidence.

**1. Opinion of Walker's Physician Assistant (Objection 1)**

First, Walker argues that the ALJ improperly ignored an opinion submitted by Walker's

physician assistant, Katherine Huynh ("Huynh"). (Pl.'s Obj. to R & R 3.) I find that the ALJ sufficiently considered Huynh's opinion.

An ALJ has an obligation "to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). In her report, the ALJ must provide "not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." Id. at 705. This is necessary so that a reviewing court is able to understand the basis of the ALJ's decision and determine whether the decision was proper. Id. at 707. The ALJ's duty to develop the record does not require, however, that the ALJ refer to every piece of evidence submitted. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."). See also Phillips v. Barnhart, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) (agreeing with the Eighth Circuit in Black); McAlister ex rel. K.D.D. v. Astrue, No. 09-2929, 2010 WL 1980324, at *1 (E.D. Pa. May 13, 2010) (noting that written evaluation of all evidence is unnecessary); Ruiz v. Astrue, No. 08-608, 2009 WL 349731, at *2 (E.D. Pa. Feb. 12, 2009) (same).

In Black, the claimant's doctor wrote to the Social Security Administration on behalf of the claimant. 143 F.3d at 385. The letter contained medical findings and the doctor's opinion that the claimant should receive disability benefits. Id. at 385-86. Although the ALJ referred to the doctor's findings, both from the letter and from treatment notes, he never "specifically discredit[ed]" the doctor's conclusion that the claimant was disabled. Id. at 386. The claimant argued that this was an error. Id. at 385. Rejecting this argument, the Eighth Circuit found that the ALJ was not required to cite the doctor's conclusion that the claimant was disabled and that,

"given the ALJ's specific references to the medical findings set forth in [the doctor's] letter, it [was] highly unlikely that the ALJ did not consider and reject [the doctor's] opinion." Id. at 386.

A similar situation exists here. Huynh submitted a Medical Source Statement ("MSS") concluding that Walker should be restricted to one to two hours walking and standing during an eight hour work day. (R. at 144-45.) The state agency reviewer ("state reviewer") issued a conflicting opinion, concluding that Walker could walk or stand for about six hours out of every eight hour work day, with normal breaks. (R. at 138-42.) Although the ALJ failed to specifically reference Huynh's recommendation regarding Walker's ability to walk and stand, it is clear that she considered the MSS because she accepted Huynh's recommendation that Walker's hand deformity limits her to occasional reaching, handling and fingering. (R. at 145.) Moreover, the ALJ's determination that Walker had the ability to walk and stand is supported by the medical evidence that the state reviewer evaluated and Huynh's own progress notes.[2] As in Black, the ALJ's explicit reference to Huynh's progress notes shows that she considered Huynh's opinion. Ultimately, the ALJ determined that Walker "has the residual functional capacity to perform light work except that she is limited to no more than occasional reaching, fingering and handling." (R. at 14.) The ALJ's opinion makes it clear that she read and evaluated Huynh's MSS. Her failure to reference a specific aspect of the MSS is an insufficient basis for remand.

---

[2] The ALJ writes that Huynh's progress notes establish a conservative treatment regimen for Walker's arthritis, consisting primarily of prescribed Ibuprofen. (R. at 15.) She also cites entries showing that Walker "'feels great,' is 'doing great,' and 'doing well.'" (Id.) The ALJ points out that the progress notes refer to one occasion when Walker walked several blocks to pick up her grandchildren at school. (Id.) This information led the ALJ to "infer[ ] an ability to do more than [Walker's] attested limitations would suggest." (Id.)

## 2. Evaluation of the State Agency Reviewer's Opinion (Objection 2)

Next, Walker objects that the ALJ "uncritically adopted the conclusions" in the state reviewer's opinion, and argues that, under SSR 96-6p, the ALJ should have given it "little or no weight . . . ." instead of the "appropriate weight" she found acceptable. (Pl.'s Obj. to R & R 4.) SSR 96-6p affords no basis for this objection.

According to SSR 96-6p, "[f]indings of fact made by State agency medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the [ALJ] and Appeals Council levels of administrative review." SSR 96-6p, 1996 WL 374180 (July 2, 1996). ALJs "must explain the weight given to these opinions in their decisions." Id. Although more weight is generally given "to opinions from . . . treating sources," 20 C.F.R. § 404.1527(d)(2) (2006), an ALJ must "always consider . . . medical opinions . . . together with the rest of the relevant evidence" submitted. 20 C.F.R. § 404.1527(b). In addition to Huynh's progress notes, Walker's medical file, and the opinions of both Huynh and the state reviewer, the ALJ considered other medical reports,[3] physical therapy notes,[4] and Walker's own testimony[5] before making the RFC

---

[3] In June 2007, Dr. Neil J. Berger, D.O. evaluated Walker's knees and found bilateral degenerative joint disease, narrowing of the patellofemoral spaces and of the left medial joint compartment, two surgical screws and probable small suprapatellar effusions. (R. at 160.) Dr. Berger found no evidence of acute fracture or dislocation, and determined that no significant change in Walker's condition had occurred since her previous examination on July 27, 2006. (Id.) Between 1997 and 2006, Dr. Berger established that only slight osteoarthritic changes occurred. (R. at 161.)

[4] Based on notes from Walker's physical therapy sessions, the ALJ determined that Walker "has improved [range of motion] and decreased antalgic gait and increased strength bilaterally in the lower extremities." (R. at 15.) While the ALJ acknowledged that Walker's progress may be somewhat "limited by varus deformities of the knees," she found that the evidence as a whole did "not suggest that [Walker] is incapable of performing light exertional

determination. Based on her review of all relevant evidence, the ALJ determined that the state reviewer's opinion with respect to Walker's ability to walk and stand was "generally consistent with the record." (R. at 16.) Walker's claim that the ALJ "uncritically adopted" the state reviewer's opinion is clearly contradicted by the fact that the ALJ modified the state reviewer's opinion to reflect Walker's physical limitations with respect to reaching, handling and fingering. I am satisfied that the ALJ's conclusions regarding the state reviewer's opinion were supported by substantial evidence.

### 3. Review of New Physical Therapy Records (Objection 3)

Third, Walker protests that the Magistrate disregarded records from a second round of physical therapy sessions held after the conclusion of Walker's September 5th, 2007 hearing. (Pl.'s Obj. to R & R 4-5.) Walker claims that these records support a determination that she was incapable of "the walking and standing required for the full range of light work." (Id. at 5.) Although these records were unavailable to the ALJ at the time she issued her decision, they were available to the Appeals Council. The Appeals Council failed to discuss the additional records in its decision affirming the ALJ. (Id.) Because the new physical therapy records are essentially duplicative of the original records, Walker's third objection fails.

A district court should remand for consideration of new evidence where the claimant satisfies three requirements. See Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). First, the evidence must be "new and not merely cumulative of what is already in

---

work." (R. at 16.) (internal quotation marks omitted).

[5] In her report, the ALJ explains that she did not find Walker's statements regarding the "intensity, persistence and limiting effects" of her symptoms "entirely credible" in light of Huynh's progress notes and the physical therapy notes. (R. at 15.)

the record. Second, the evidence must be material; it must be relevant and probative" and there must be "a reasonable possibility that the new evidence would have changed the outcome of the . . . determination. . . . Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record." Id. (internal quotation marks and citations omitted). Because Walker fails to satisfy the first requirement, remand is inappropriate.

The records from Walker's second round of physical therapy are certainly new; this round of physical therapy began on September 18, 2007, nearly two weeks after Walker's hearing with the ALJ. (R. at 187.) The notes from these physical therapy sessions, however, are largely cumulative of information already in the record. The discharge papers from Walker's first round of physical therapy sessions indicate that Walker's range of motion, gait, and strength improved over the course of therapy. (R. at 176.) Notes from throughout the first session show, however, that Walker experienced "fluctuations in pain intensity" and that her "progress [would] likely be limited by varus deformities" of the knees. (R. at 176, 180.) The records from Walker's second round of physical therapy are consistent with these observations. On September 18, 2007, a physical therapist noted that Walker continued to have difficulties with her range of motion, strength, and gait. (R. at 186.) On October 18, 2007, however, a physical therapist wrote that Walker's range of motion, strength, and gait had minimally improved since her first visit. (R. at 190.) The ALJ was well aware from her evaluation of the first set of physical therapy records that these symptoms existed and fluctuated over time. There is no significant difference between the two rounds of therapy that would justify requiring the ALJ to review the new records.

### B. Step Five- Occupational Base Determination

Walker's final two objections relate to step five of the disability analysis. Under step

five, the ALJ must decide whether "jobs exist in significant numbers in the national economy that the claimant could perform." Rutherford, 399 F.3d at 551. The ALJ found that Walker could perform the following jobs:

1) Usher/Ticket taker- approximately 33,000 jobs nationally and 600 jobs regionally; and
2) Inspector- approximately 290,000 job [sic] nationally and 4,600 jobs regionally; and
3) Machine attendant- approximately 40,000 jobs nationally and 650 jobs regionally; and
4) Security guard- approximately 10,000 jobs regionally.

(R. at 17.) Walker claims that the ALJ's finding that a sufficient occupational base exists is unsupported by substantial evidence.

### 1. Evaluation of Job Opportunities (Objection 4)

Walker objects that the ALJ failed to present substantial evidence that Walker could perform a significant number of jobs in the national economy. (Pl.'s Obj. to R & R 6.) Because the ALJ (1) asked the vocational expert ("VE") a hypothetical question that failed to fully reflect Walker's limitations, and (2) never resolved the resulting conflicts, I sustain Walker's objection.

To determine whether sufficient jobs exist, the ALJ typically poses hypothetical questions to the VE asking whether the claimant could perform certain occupations given his or her "[RFC], age, education, and past work experience," and whether those occupations exist in significant numbers in the economy. Boone v. Barnhart, 353 F.3d 203, 205 (3d Cir. 2003). "'A hypothetical question posed to a vocational expert must reflect *all* of a claimant's impairments.'" Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002). This means that "limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response." Rutherford, 399 F.3d at 554. In addition, an ALJ "has an affirmative responsibility to ask about

any conflict between . . . VE . . . evidence and information provided in the [Dictionary of Occupational Titles ("DOT")]." SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

Williams v. Barnhart illustrates these requirements. 424 F. Supp. 2d 796 (E.D. Pa. 2006). In Williams, the ALJ asked the VE to assume that the claimant could do light exertional work without "*repetitive* or continuous use of the hands." Id. at 801 (emphasis added). "Repetitive" is not a category listed in the DOT,[6] and the ALJ and the VE seemed to interpret the term differently. Id. at 801-02. Nonetheless, the ALJ relied on the VE's testimony to determine that the claimant could perform a significant number of jobs existing in the national economy. Id. at 804. Because the ALJ never resolved these apparent conflicts, the court found that there was insufficient evidence to support the ALJ's conclusion. Id.

In this case, the ALJ's hypothetical question to the VE was similarly flawed. In her report, the ALJ states that Walker is "limited to *no more than occasional* reaching, fingering and handling." (R. at 14.) (emphasis added). Yet, in her hypothetical, the ALJ asked the VE to limit his response to occupations that lack "*constant* reaching, fingering and handling." (R. at 54.) (emphasis added). The hypothetical should have also prohibited "frequent" reaching, fingering, and handling, because "frequently" falls between "occasionally" and "constantly" in the DOT. See Williams, 424 F.Supp. 2d. at 801. Because the hypothetical improperly suggested that Walker could perform such work, the VE responded with several occupations that required

---

[6] The frequency categories listed in the DOT are: "Not Present," "Occasionally," "Frequently," and "Constantly." See Williams, 424 F. Supp. 2d at 801.

frequent reaching, fingering, and handling.  (R. at 54-56.)  Although "inconsistencies need not be fatal if substantial evidence exists in other portions of the record that can form an appropriate basis to support the result," there is no appropriate basis when there are inconsistencies as to all jobs provided by the VE.  Rutherford, 399 F.3d at 557 (internal citations omitted).  Such is the case here.

The VE suggested the following jobs:  (1) inspector; (2) machine attendant; (3) security guard; (4) usher/ticket taker.  (R. at 54-56.)  Each occupation fails to comport with Walker's RFC.  First, although the VE testified that the inspector position (739.687-106) required only "occasional" hand use, the DOT indicates that it requires constant reaching, fingering and handling.  (R. at 55-56.)  Moreover, contrary to the VE's testimony, the position is semi-skilled, and beyond Walker's capacity.[7]  The ALJ never resolved this conflict.  Second, although the VE testified that the machine attendant position (692.685-258) required only "occasional" hand use, the DOT shows that it actually requires frequent reaching and handling.  The ALJ also failed to resolve this conflict.  Third, the security guard position (372.677-030) is semi-skilled, and thus beyond Walker's capacity.  The VE acknowledged during his testimony that security guard is a semi-skilled occupation.  Again, the ALJ failed to resolve this conflict.  Finally, the VE grouped the usher and ticket taker positions together, providing no indication of how many jobs exist for each respective occupation.  Although the VE states that the ticket taker position (344.667-010) requires occasional hand use, the DOT shows that the position requires frequent reaching and

---

[7] The ALJ writes that Walker's occupational base is "unskilled."  (R. at 17.)

handling. The ALJ never resolved this conflict. Of the occupations suggested by the VE, only the usher position (344.667-014) satisfies Walker's hand use limitations and skill level. Because the usher and ticket taker positions were grouped together in the VE's testimony, however, it is unclear how many usher positions actually exist. Thus, the record lacks substantial evidence that jobs exist in significant numbers in the national economy that Walker could perform. I will remand the case for reconsideration of this matter.

### 2. Erosion of Occupational Base (Objection 5)

Walker's fifth objection is that the ALJ failed to comply with SSR 83-12 and SSR 83-14. (Pl.'s Obj. to R & R 7.) Both rulings provide guidance for determining the erosion of a claimant's occupational base when the claimant's "exertional RFC does not coincide with the definition of any one of the ranges of work as defined in [20 C.F.R.] sections 404.1567 and 416.967."[8] SSR 83-12, 1983 WL 31253 (1983). Because the ALJ failed to show that a sufficient occupational base existed, she could not have determined the extent of its erosion. On remand, after evaluating the inconsistencies between the VE's testimony and the DOT, the ALJ should reassess whether Walker's occupational base is eroded by her physical limitations with respect to reaching, handling, and fingering.

---

[8] 20 C.F.R. § 404.1567 and 20 C.F.R.§ 416.967 organize occupations into five exertional categories: "sedentary," "light," "medium," "heavy," and "very heavy."

V. **Conclusion**

For the reasons set forth above, I will remand so that the ALJ can properly consider step five of the disability analysis.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:    Copies **MAILED** on _____ to: